```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 NICOLE THOMPSON,

                  Plaintiff,              MEMORANDUM & ORDER
                                             20-CV-1764(EK)
            -against-

 KILOLO KIJAKAZI, ACTING
 COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff seeks judicial review of the Commissioner of the Social Security Administration's decision to deny her claims for disability insurance benefits.[1]  Before the Court are the parties' cross-motions for judgment on the pleadings.  For the following reasons, the Court grants the Commissioner's motion and denies Plaintiff's cross-motion.

## I. Background

### A. Procedural Background

Plaintiff applied for disability benefits on December 18, 2016, alleging that she was disabled since November 26, 2014.  The claim was initially denied.  Plaintiff requested a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul, former Commissioner of Social Security, as the Defendant in this suit.  *See* 42 U.S.C. § 405(g).

hearing and appeared before an administrative law judge ("ALJ") on November 28, 2018.  The ALJ concluded that Plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, rendering it final.  This appeal followed.

**B.   The ALJ Decision**

An ALJ must follow a five-step inquiry for evaluating disability claims.  First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, the ALJ evaluates (at step two) whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that significantly limits the applicant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the ALJ identifies a severe impairment, she must determine if it meets or equals one of the impairments listed in Appendix 1 of the regulations (the "Listed Impairments").  *Id.* § 404.1520(d); 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, the ALJ will deem the applicant disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability, and had the following severe impairments: lumbar spine disc herniation, cervical spine disc bulging, a left

2

meniscal tear, depression, and anxiety disorder. Administrative Transcript ("Tr.") 17, ECF No. 11. The ALJ also acknowledged Plaintiff's "cognitive and memory issues," though she observed that these were better described as "symptoms of the above alleged mental impairments" — namely, depression and anxiety — "rather than individual impairments" in their own right. *Id.* The ALJ determined that none of these impairments or symptoms rose to the level of a "Listed Impairment." *Id.*

At step four, the ALJ must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding her limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ concluded here that Plaintiff had the residual capacity to perform "sedentary work" with limitations. Tr. 19. Those limitations included the requirement that Plaintiff be afforded a "sit / stand option," allowing for a change of position every hour. The ALJ also found that Plaintiff could work only in a "low stress setting," which she defined as "requiring no assembly line pace, no fast-paced production requirements, no more than occasional changes in a work routine or a work setting, and with little independent decision making or goal setting." *Id.*

The ALJ then considered whether, in light of the RFC determination, the claimant could perform "past relevant work." 20 C.F.R. § 404.1520(f). She found that Plaintiff could not

3

perform her past work as a home health aide. At step five, the ALJ evaluated whether the claimant could perform jobs existing in significant numbers in the national economy. *Id.* § 404.1520(g). The ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy, including as a "document preparer, hand mounter, and table worker." Tr. 29. Given that conclusion, the ALJ held that Plaintiff was not disabled.

## II. Standard of Review

A federal district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotations omitted). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

4

## III. Discussion

Plaintiff asserts two principal grounds on appeal. First, she contends that the ALJ failed to account for certain medically determinable impairments — namely Plaintiff's cognitive and memory issues — in calibrating her RFC. Second, Plaintiff argues that the ALJ failed to account for certain physical limitations (especially concerning her pain levels and ability to sit) appropriately.

### A. Cognitive Impairments

Plaintiff argues that the ALJ's decision failed to capture her cognitive and memory impairments in her analysis — both at step two and in the RFC assessment. Plaintiff invokes *Salisbury v. Saul* in support of this argument. *See* No. 19-CV-706, 2020 WL 913420, at *30 (S.D.N.Y. Feb. 26, 2020) (Cott, M.J.) (ALJ "must specify the functions a claimant is capable of performing, and may not simply make conclusory statements regarding a claimant's capacities"). Relatedly, she argues that the ALJ failed to reconcile the treating physicians' opinions with the remaining medical evidence, as required by *Burgess*, 537 F.3d at 129, and accorded too much weight to the consultative examiner's opinion.

Plaintiff is correct that the ALJ did not find Plaintiff's cognitive and memory issues to be "severe impairments" at step two. *See* Tr. 17. This was not, however,

5

because she doubted the severity of these issues; instead, it was because she viewed Plaintiff's cognitive and memory issues as "symptoms of" her other impairments — namely, depression and anxiety disorder — rather than impairments in their own right. *Id.* The question of whether the cognitive and memory issues are impairments or symptoms of another impairment is one of taxonomy, not substance. And it is well settled that any error associated with an ALJ's failure to identify a given impairment at step two will be harmless, so long as the ALJ weighs the relevant symptoms appropriately in formulating the RFC determination. *E.g.*, *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) ("Because these conditions were considered during the subsequent steps, any error [at step two] was harmless."); *McAllister v. Colvin*, 205 F. Supp. 3d 314, 326 (E.D.N.Y. 2016) (no reversible error where ALJ considered plaintiff's impairments in subsequent steps); *Gallup v. Comm'r of Soc. Sec.*, No. 11-CV-1345, 2014 WL 2480175, at *5 (N.D.N.Y. June 3, 2014) (where ALJ "considered the impact" of a disorder on plaintiff's RFC, the "omission of the specific diagnosis was harmless"). Here, the ALJ considered Plaintiff's cognitive limitations thoroughly at steps two through four, even if she did not label them "impairments," and this consideration plainly informed the ALJ's RFC determination.

6

Plaintiff also argues that the ALJ failed to determine the consistency between her treating sources' opinions and the remaining record evidence. Plaintiff does not actually state which treating sources' opinions she is referring to in this vein. In any event, her argument is without merit.

The ALJ's ultimate determination — that Plaintiff's "mental" impairments were severe but not disabling — reflected a careful balancing of Plaintiff's abilities and limitations. The ALJ's opinion expressly considered, for example, Plaintiff's executive function, attention, information processing speed, motor skills, and global cognitive scores. Tr. 22. While the ALJ did not explicitly describe the "consistency" of every treating physician's opinion with the entirety of the record, she plainly wrestled with them in detail. She evaluated the opinions of Drs. Golzad, Lerner, and Schweiger, Plaintiff's treating physicians, among others. She noted that Dr. Lerner found Plaintiff to exhibit significant concentration issues. *Id.* at 20. Nevertheless, as described in her decision, other examinations found Plaintiff's concentration to be "normal" and "intact." *Id.* at 18, 25, 26. For example, Drs. Golzad and Schweiger both noted that Plaintiff's symptoms, while serious, were mostly improving and that her cognitive abilities remained in the average or low-average range. *Id.* at 22, 476, 672, 1395. Moreover, the ALJ need not undertake "a slavish recitation of

7

each and every factor" where her "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013). Where — as here — "a searching review of the record" reveals "that the substance of the [treating physician] rule was not traversed," a reviewing court will affirm. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal quotations omitted).

She also cited the opinion of consultative examiner Dr. Clementina Porcelli, a psychologist who examined Plaintiff and found her coherent and goal directed, as well as fully oriented, even though she demonstrated average to below-average cognitive function. Tr. 25, 872. Dr. Porcelli observed that the Plaintiff could "follow and understand simple direction and instruction without limitation." *Id.* at 873. While Plaintiff was mildly limited "with regard to performing simple tasks independently," she nevertheless displayed "no limitation with regard to maintaining attention and concentration." *Id.* at 25, 873. Plaintiff argues that the ALJ gave inordinate weight to this opinion because Dr. Porcelli failed to consider her traumatic brain injury-induced limitations. But Dr. Porcelli explicitly noted the traumatic brain injury, despite Plaintiff's argument to the contrary, and she considered its attendant symptoms in her overall report. *See id.* at 870-74.

The ALJ also considered Plaintiff's hobbies, including listening to music and reading, which require some degree of concentration, as well as the fact that Plaintiff had been able to manage her medical appointments and medicine without assistance. *Id.* at 18, 25, 26. These daily activities weighed against Plaintiff's alleged inability to work due to her cognitive impairments. *See Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's daily activities undermined disability allegations).

In recognition of Plaintiff's serious but improving cognitive impairments, the ALJ limited Plaintiff's RFC to occupations performed in a "low stress setting, defined as requiring no assembly line pace, no fast-paced production requirements, no more than occasional changes in a work routine or a work setting, and work with little independent decision making or goal setting." Tr. 19. These limitations were clearly calibrated to account for Plaintiff's severe mental impairments — depression and anxiety — *and* the symptoms that Plaintiff argues went unacknowledged in the RFC determination. The limitation on the frequency of changes in "work routine," for example, is clearly responsive to the evidence concerning Plaintiff's memory loss. The ALJ thus committed no legal error in taking account of Plaintiff's cognitive and memory issues.

**B.   Physical Limitations**

   1.   Pain

Plaintiff also challenges the ALJ's consideration of her alleged physical limitations.  First, Plaintiff argues that the ALJ erred by (1) failing to articulate how Plaintiff's subjective reports of pain affected the RFC and (2) giving insufficient weight to those reports.  Plaintiff testified that she had pain in her "back, my neck and all over."  *Id.* at 73.  Had the ALJ adequately weighted such reports, Plaintiff contends, the ALJ would have had to conclude that Plaintiff was disabled.  Instead, Plaintiff claims, the ALJ defaulted to a "boilerplate" conclusion that Plaintiff's testimony was "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  *Id.* at 25.

Under appropriate circumstances, the subjective experience of pain can support a finding of disability.  *See Gallagher v. Schweiker*, 697 F.2d 82, 84 (2d Cir. 1983).  "[W]hen determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  At the same time, "disability requires more than mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

10

The ALJ did not err. Substantial evidence supported the ALJ's conclusion that Plaintiff could perform sedentary work (with the expressed limitations) despite her pain. Plaintiff herself reported that her back pain was "much improved" after surgery, and objective imaging revealed no post-surgery complications. Tr. 1295, 1403. Her neck pain also improved after epidural steroid injections. *Id.* at 332, 351, 353-54, 357, 362. Moreover, Plaintiff's range of motion, while less than normal, did not suggest total disability. *Id.* at 20, 22, 23, 26. Plaintiff's gait improved after surgery. *Id.* at 26. In the end, the ALJ observed, Plaintiff's daily activities were inconsistent with disabling pain. *Id.* In addition to her hobbies, the ALJ noted that Plaintiff prepared simple meals, picked her child up from school, and performed light chores around the house. *Id.* at 26, 69, 872-73.

The ALJ considered this evidence against Plaintiff's claims of pain and supporting evidence, but appropriately determined that her pain was not fully disabling. *See*, *e.g.*, *id.* at 19, 26. For example, the ALJ noted that Dr. Anand and other physicians described Plaintiff as "totally disabled" due, in part, to her neck and back pain. *Id.* at 21. The quoted description constitutes a legal conclusion, however, and the ALJ was permitted to reject it in light of the conflicting evidence

11

indicating that Plaintiff's pain had improved and did not preclude her from performing certain daily activities.

Thus, substantial evidence supported the ALJ's assessment, notwithstanding Plaintiff's subjective complaints of pain and the conclusions of some of her treating physicians. Further, Plaintiff's RFC determination was responsive to Plaintiff's complaints about pain. The ALJ limited Plaintiff to a restricted range of sedentary activity, but properly concluded that her pain did not preclude her from working altogether.

2. Ability to Sit

The ALJ concluded that Plaintiff had the residual capacity to sit for six hours per day, so long as she was provided a "sit / stand" option. Plaintiff contests this conclusion. She points to her own written statement attesting that she was unable to sit for more than ten to fifteen minutes at a time, *id*. at 271, and asserts that the record is devoid of any evidence — let alone substantial evidence — contradicting that statement.

This argument misconstrues the record. While the ALJ did not explicitly address Plaintiff's written statement, she did cite treatment notes from July 2015 indicating Plaintiff could sit continuously for up to thirty minutes and stand for up to twenty, *id.* at 22, 327, and from October 2015 indicating Plaintiff could sit and stand for forty-five minutes and walk

12

for three blocks. *Id.* at 321. The ALJ also considered the conclusions of Dr. Olga Yevsikova, who saw Plaintiff for a consultative examination and opined that Plaintiff had only mild to moderate limitations in "squatting," as well as walking and standing. *Id.* at 23-24, 878; *see White v. Berryhill*, 753 F. App'x 80, 82 (2d Cir. 2019) (upholding ALJ's inference that plaintiff could perform light work "on a full-time sustained basis" despite doctor's opinion that claimant had "moderate" limitations in standing, sitting, and performing other activities); *Carroll v. Colvin*, No. 13-CV-456, 2014 WL 2945797, at *4 (W.D.N.Y. June 30, 2014) ("[S]everal courts have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing." (collecting cases)).

Plaintiff challenges the ALJ's consideration of the opinion of Dr. Yevsikova, objecting that she afforded it inordinate weight. Plaintiff cites *Curry v. Apfel* for the proposition that that Dr. Yevsikova's findings of only "mild" and "moderate" physical limitations were too vague to justify the ALJ's reliance. 209 F.3d 117, 123 (2d Cir. 2000) (the "use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to

13

medical evidence, to make the necessary inference that [a plaintiff] can perform the exertional requirements of sedentary work"). Dr. Yevsikova's opinion was not vague. She provided four pages of additional information (including more objective medical findings) underpinning her conclusion. Tr. 875-78. "Courts have found *Curry* to be inapplicable where, as here, the consultative 'examiner conducts a thorough examination and explains the basis for the opinion.'" *Martin v. Comm'r of Soc. Sec.*, No. 19-CV-406, 2020 WL 3547042, at *2 (W.D.N.Y. June 30, 2020); *see also Quintana v. Berryhill*, No. 18-CV-0561, 2019 WL 1254663, at *17 (S.D.N.Y. Mar. 19, 2019) (Parker, M.J.) ("[C]ourts in this district have held that a medical source's use of the terms 'mild' or 'moderate' to describe a claimant's impairments does not automatically render their opinion vague as long as the opinion contains objective medical findings to support their conclusion.").

Therefore, the ALJ did not err with respect to Plaintiff's alleged physical limitations.

### IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies

the Plaintiff's cross-motion.  The Clerk of Court is respectfully requested to enter judgment and close this case.

        SO ORDERED

                               /s/ Eric Komitee
                              ERIC KOMITEE
                              United States District Judge

Dated:    November 12, 2021
            Brooklyn, New York